## UNITED STATES v. LIQUID CARBONIC CO.

### (Circuit Court of Appeals, Second Circuit.     March 10, 1908.)

### No. 178 (4,245).

CUSTOMS DUTIES—CLASSIFICATION—"TUBES"—GAS CYLINDERS—"STEEL TUBES FINISHED."

> The provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 152, 30 Stat. 163 (U. S. Comp. St. 1901, p. 1641), for "steel tubes, finished," includes bottle-shaped vessels of steel, which are used in the transportation of gas and are about four feet long and eight inches in diameter, with one end permanently closed and the other tapered to a neck.

Appeal from the Circuit Court of the United States for the Southern District of New York.

There was no opinion below. The Circuit Court affirmed a decision by the Board of United States General Appraisers (G. A. 6,345; T. D. 27,295), which had reversed the assessment of duty by the collector of customs at the port of New York. The facts of the case appear from the following extract from the opinion filed by the Board of General Appraisers:

"Ficher, General Appraiser. The merchandise involved in these two protests is described on the respective invoices as 'steel cylinders.' Duty was assessed thereon at the rate of 45 per cent. ad valorem under the provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 193, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1645); and the importers now claim that the articles are 'tubes,' dutiable properly at 35 per cent. under paragraph 152 of said act (30 Stat. 163 [U. S. Comp. St. 1901, p. 1641]), which reads as follows: '152. Lap welded, butt welded, seamed or jointed iron or steel boiler tubes, pipes, flues or stays, not thinner than number sixteen wire gauge, two cents per pound: welded cylindrical furnaces, made from plate metal, two and one-half cents per pound; all other iron or steel tubes, finished, not specially provided for in this act, thirty-five per centum ad valorem.' * * * The importers of the goods covered by protest 179,518, in a letter dated November 1, 1905, which is a part of the record, expressly waived their right to put in testimony, and submitted their protest for consideration, referring to T. D. 22,716, in which the Treasury Department announced its acquiescence in the decision of the Circuit Court of Appeals in Downing's Case, 105 Fed. 1005, 44 C. C. A. 686, affirming without opinion Downing v. U. S. (C. C.) 99 Fed. 423, and to G. A. 4,898 (T. D. 22,932), a board decision following the judicial rulings above. As the government desired to introduce some testimony, the case was set for hearing on February 20, 1906, and a number of witnesses were examined.

*   *   *

"The goods are bottle-shaped vessels of steel, about four feet in length and eight inches in diameter, with a steel cap fitted over and shrunk on one end, thus permanently closing it, and with the other end tapered to a neck. There is a thread cut on the outside of this neck for the purpose of screwing on a cap for the protection of the contents of the cylinder, and on the inside of the neck for the purpose of a valve connection. The articles are used for transporting carbonic acid gas, with which they are filled at a very high pressure. As has been said, no testimony was introduced by the importers; but the witnesses for the government, ten in number, were evidently well qualified, and their testimony as to the method of manufacturing the cylinders may be accepted as accurate. According to these witnesses there are two methods. In the first, a seamless tube of the required length is taken, and one end is drawn in and welded to a hemispherical shape; and the other end is 'necked down' to a bottle-neck shape, leaving an orifice for the insertion of a valve, as above referred to. In the other process a flat plate is sheared into a circular form, and then placed over a circular die, which is forced down upon the plate, causing it to assume a cup or bucket-like form. The cup is then placed in the end of a round mandril with a spherical end, and mandril

and cup are then forced through a series of circular dies, elongating the cap and reducing the thickness of the lateral walls, but preserving the original thickness of the material in the spherical end. The other end is then necked as described in the previous process. It would appear to one approaching this question de novo, and with only common understanding to guide him, that neither one of these processes produces tubes, but rather that the products of the process first described are articles made from tubes, while those made by the second process were stopped just short of the stage of manufacture where they would have become tubes. The witnesses were unanimous and emphatic in their declaration that these gas holders are not tubes within the understanding of anybody; and that this pronouncement is in accord with ordinary usage of words is signally corroborated by evidence from the importers themselves, as exhibited by the bills of lading, entries, and invoices, which all designate the goods as steel cylinders, and particularly by a copy of the protestants' own catalogue, that was admitted in evidence and which throughout invariably refers to the articles as drums or cylinders, never as tubes.

"If the question raised by this protest 179,518 were before us for the first time, we have no hesitation in saying that we should reach a conclusion adverse to the contention set up by the importers. We feel, however, that we are concluded in the consideration of the question by the decision in the Downing Case, supra. The goods are practically alike, and while, in the present case, the government has introduced much and satisfactory testimony that the term 'tubes' does not include these gas cylinders, it is also true that there was testimony to the same effect in the case passed on by the court, although the five-line opinion of Wheeler, J., reversing G. A. 3,362 (T. D. 17,571), fails to disclose the character of the impression made on the judicial mind by the testimony presented by the record, which comprised over 100 printed pages. Protest 179,518 is therefore sustained, and the decision of the collector thereon reversed." * * *

D. Frank Lloyd, Asst. U. S. Atty.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for importers.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The Board of General Appraisers has found that these importations are practically like those which were before this court in U. S. v. Downing, 105 Fed. 1005, 44 C. C. A. 686. The testimony in both cases is substantially the same, and we see no reason to modify our former ruling.

Decision of the Circuit Court is affirmed.